# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| DALE ALLEN HAMER, | § | |
| TDCJ No. 02032098, | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| V. | § | A-24-CV-00941-RP |
| | § | |
| ERIC GUERRERO, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Dale Allen Hamer's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Eric Guerrero's Amended Answer (ECF No. 36), and Petitioner's Response (ECF No. 38). Petitioner has also filed a Motion to Dismiss Respondent's Amended Answer. (ECF No. 39.) Having reviewed the record and pleadings submitted by both parties, the Court denies Petitioner's federal habeas petition under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). The Court also denies Petitioner's motion to dismiss.

## 1) Background

In September 2015, Petitioner was charged by indictment for driving while intoxicated. The indictment stated that, prior to the commission of the alleged offense, Petitioner was convicted of intoxication manslaughter on July 10, 1996, in Johnson County, Texas. The indictment also listed two enhancement paragraphs, detailing five prior convictions for driving while intoxicated: three on October 27, 1989, in Hill County, Texas, and two on August 16, 1985, in Dallas County, Texas. (ECF No. 37-1 at 4-5.) On October 30, 2015, Petitioner pleaded

1

guilty to the indicted offense, true to both enhancement paragraphs, and the trial court sentenced him to twenty years imprisonment. *State v. Hamer*, No. D-1-DC-15-904504 (331st Dist. Ct., Travis Cnty., Tex. Oct. 30, 2015). (ECF No. 37-1 at 6-7.)

As relevant to Petitioner's instant federal habeas petition, he was denied parole on June 6, 2023, based on the following reasons: criminal history, substance use involvement, and unsuccessful periods of supervision on previous periods of parole. (ECF No. 1-3 at 8.) On July 17, 2023, Petitioner executed a state habeas corpus application, listing the following grounds of relief:

1. Legislation enacted after September 1, 1996, that barred prisoners whose convictions contain an affirmative deadly-weapon finding from being considered for mandatory supervision or discretionary mandatory supervision, violates the Ex Post Facto Clause. The Parole Board's application of this statute to Petitioner, thereby cancelling his good time credits, unquestionably disadvantaged him.

2. Petitioner has been denied parole seven times without being allowed to review and challenge documents considered by the Parole Board in denying his parole.[1]

3. Petitioner has been denied mandatory supervision without probable cause. The Parole Board is impermissibly applying a statute to increase Petitioner's punishment for a crime already committed.

4. Petitioner is being denied parole for the same reason as his criminal offense, which implicates double jeopardy.

5. There is false information in Petitioner's parole file.

(ECF No. 13-2 at 7-22.) On November 1, 2023, the TCCA denied Petitioner's state habeas application without written order. *Ex parte Hamer*, No. WR-41,855-08 (Tex. Crim. App. Nov. 1, 2023). (ECF No. 13-4.)

---

[1] Petitioner alleges some of the documents in his parole file are false or illegal, including his criminal indictment and the probable cause affidavits. Petitioner already litigated these claims in a prior federal habeas petition, *see Hamer v. Lumpkin*, No. 1:17-cv-00107-RP (W.D. Tex. 2017), and the Court has no jurisdiction to consider them in this application until Petitioner first receives approval from the Fifth Circuit Court of Appeals to file a successive habeas corpus petition, *see* 28 U.S.C. § 2244(b)(3)(A); *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000) (Section 2244(b)(3)(A) "acts as a jurisdictional bar to the district court's asserting jurisdiction over any successive habeas petition" until the appellate court has granted petitioner permission to file one).

On August 7, 2024, Petitioner executed his federal habeas petition, listing the following grounds of relief:

1. The retroactive application of the Texas legislature's 1996 changes to mandatory supervision produces sufficient risk of increased punishment, thereby violating the Ex Post Facto Clause.

2. Petitioner has been denied equal opportunity to review his parole file as offenders with counsel. The Parole Board fails to comply with the Administrative Procedures Act (APA) and its own rules.

3. The Parole board denied Petitioner's mandatory supervision eight times in retaliation for filing state and federal litigation, including in 2024.

4. The Parole Board is denying the benefit of good time credits based on Petitioner's commission of an offense where there was an affirmative deadly-weapon finding, thereby violating the Ex Post Facto Clause.

(ECF No. 1 at 6-11.) Petitioner attached a memorandum of law identical to the one he attached to his state habeas application. He also attached notices of his parole denials from 2018-2020, and 2022-2024. (*Id.* at 17-22; ECF No. 1-3 at 7-13.)

Because Petitioner's federal habeas application challenged his 2023 and 2024 parole denials, the Court stayed his federal petition so he could return to state court to exhaust his administrative remedies regarding his 2024 parole denial. (ECF No. 18.) On October 28, 2025, Petitioner alerted the Court he had exhausted his claims regarding his 2024 parole denial. (ECF No. 35.) Respondent thereafter filed an amended answer, arguing Petitioner's claims are either non-cognizable or meritless. (ECF No. 36.) Petitioner replied to Respondent's answer and filed a motion to dismiss it. (ECF Nos. 38-39.)

**II. Standard of Review**

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings

unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, not just incorrect, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. "'If this standard is difficult to meet—and it is—that is because it was

meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

**III. Analysis**

1. Ex Post Facto Clause (claims 1, 4)

In Petitioner's first and fourth claim, he argues the Parole Board is denying him eligibility for mandatory supervision and the benefit of good time credits based on revisions to Texas's mandatory supervision statute passed in 1996. Petitioner argues the application of this law increases his punishment in violation of the Ex Post Facto Clause.

Mandatory supervision in Texas changed in 1996 as described below by the Texas Supreme Court:

> Prior to 1996, all eligible inmates whose good time plus actual time in prison equaled the total length of their sentences were absolutely required to be released on mandatory supervision. [citations omitted]. The Parole Board had no discretion to deny release to an inmate even if the Board was certain he would pose a clear and present danger to society. …

> Concerned with this "automatic open-door policy," the Texas Legislature repealed the mandatory supervision statute and enacted a policy that provided for some discretion in the Texas Department of Criminal Justice's (TDCJ) decision to release an inmate to mandatory supervision. [citations omitted] Effective September 1, 1996, the revised statute, now found in the Government Code, states, "an inmate may not be released to mandatory supervision if a parole panel determines that: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public." TEX. GOV'T CODE ANN. § 508.149(b).

> The amendments also contained a saving clause, applying the change in the law to offenses committed after the effective date of the statutory amendment, while retaining the prior law for offenses committed before the effective date. *See* H.B. 1433 at §§ 3 and 4; *see also Ex parte Mabry*, 137 S.W.3d 58, 59-60 (Tex. Crim. App. 2004) (holding that "[t]hese clauses reflect a clear intention by the Legislature to apply the old law to prisoners serving a sentence for an offense committed prior to the September 1, 1996, effective date. Thus, the law prior to those revisions applies to applicant, whose offense was committed in 1990.").

5

*Ex parte Rivers*, 663 S.W.3d 683, 685-86 (Tex. Crim. App. 2022). Importantly, the 1996 law also changed the eligibility requirements for mandatory supervision. Prior to September 1, 1996, a prisoner could not be released to mandatory supervision "if the prisoner [was] serving a sentence for an offense and the judgment for the offense contains an affirmative finding [for a deadly weapon]." However, after September 1, 1996, the law stated "[a] prisoner may not be released to mandatory supervision if the prisoner is serving *or has previously been convicted for* an offense and the judgment for the offense contains an affirmative finding [for a deadly weapon]." (emphasis added).

The Court understands Petitioner's Ex Post Facto claim to be based on this latter change in the 1996 law. Specifically, Petitioner appears to claim that, prior to the change, Petitioner's conviction for intoxication manslaughter would not have impacted his eligibility for mandatory supervision for other crimes. However, post-September 1, 1996, that conviction now makes him ineligible for mandatory supervision for other crimes, thereby increasing his punishment in violation of the Ex Post Facto Clause.

"Imposition of punishment more severe than that assigned when a criminal act occurred is a violation of the Constitution's prohibitions on ex post facto laws." *Warren v. Miles*, 230 F.3d 688, 692 (5th Cir. 2000) (citing U.S. CONST. art. I, § 9, cl. 3; *Collins v. Youngblood,* 497 U.S. 37, 42 (1990)). "[L]egislative modifications to early release provision or parole standards may violate the prohibition on ex post facto legislation if applied retroactively." *Id.* (citations omitted). "For an ex post facto violation to occur, two elements must be present: (1) a law must be retrospective, that is, it must apply to events occurring before its enactment, and (2) the new law must create a sufficient risk of increasing the punishment attached to the defendant's crimes." *Id*. (citing *Cal. Dep't. of Corrs. v. Morales*, 514 U.S. 499, 509 (1995)).

Even assuming, for the sake of argument, that the 1996 mandatory supervision modifications created a sufficient risk of increasing the punishment attached to Petitioner's crimes, they are not retrospective. In *Perkins v. Cabana*, 794 F.2d 168 (5th Cir. 1986), the Fifth Circuit upheld a Mississippi habitual offender sentencing enhancement statute applied to defendants whose prior offense occurred before the effective date of the statute. The court reasoned as follows:

> The statute defines and fixes the punishment for future felony offenses. That it does so in terms of past offenses does not punish or increase the punishment for those past offenses. The State has done no more than classify felony recidivists in a different category for punishment purposes than the category provided for first felony offenders. No person is exposed to the increased penalty unless he commits a felony after the enactment.

*Id.* at 169. In *McCall v. Dretke*, 390 F.3d 358, 365-66 (5th Cir. 2004), the Fifth Circuit applied this reasoning to deny a § 2254 petition where the petitioner argued, similarly to Petitioner, that the post-September 1, 1996, mandatory supervision statute should not apply to a pre-September 1, 1996, conviction. The Fifth Circuit concluded that the application of the September 1, 1996, law was not retroactive because it was "'not an additional penalty for earlier crimes,' but [rather] 'a stiffened penalty for the latest crime.'" *Id.* (quoting *Gryger v. Burke*, 334 U.S. 728, 732 (1948)). Accordingly, the Court concludes that the state habeas court's rejection of Petitioner's ex post facto claims was not an unreasonable application of clearly established federal law. These claims are denied.

2. Parole File Access, Retaliation (claims 2, 3)

In Petitioner's second claim, he argues he is being denied the opportunity to review his parole file while offenders with counsel are able to view their parole files. He argues this violates his rights to equal protection of the law, and that the Parole Board is failing to comply with the

APA and its own policies and rules. In his third claim, he argues the Parole Board is denying him release on parole in retaliation for his federal and state litigation.

A prisoner has no federal constitutional right to be released before the expiration of his sentence. *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998). Under Texas state law, parole is discretionary and thus does not create a liberty interest protected by the Due Process Clause. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995); *see also Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997). Because Texas inmates have no protected liberty interest in parole, they do not have a liberty interest in parole consideration or other aspects of parole procedures. *Johnson*, 110 F.3d at 308 (Texas prisoners cannot mount a challenge against any state parole review procedure on procedural or substantive due process grounds).

A prisoner who has met the minimum requirements under the applicable parole eligibility statutes is not automatically entitled to be released on parole; rather, he is only entitled to a review to determine whether he will be released. *See* 37 Tex. Admin. Code § 145.3(1) ("Release to parole is a privilege, not an offender right, and the parole decision maker is vested with complete discretion to grant, or to deny parole release as defined by statutory law."); *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995) (because a prisoner has no liberty interest in obtaining parole in Texas, he cannot complain of the constitutionality of procedural devices attendant to parole decisions). The Parole Board "is the exclusive authority for determining whether qualified prisoners receive parole." *Johnson*, 110 F.3d at 303. Accordingly, Petitioner's claim that he is not allowed to review his parole file in violation of the Parole Board's policies and the APA fails because he has no right to parole or any particular parole procedures. Further, because he has no

constitutional right to parole, his allegation that he is being denied parole in retaliation for his litigation activities also fails as a matter of law.

Finally, Petitioner also alleges that offenders with counsel are allowed to review their parole files, which violates his rights to equal protection. To show an equal protection violation, Petitioner "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated[,]" *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992) (citation omitted), or demonstrate that a classification impermissibly interferes with a fundamental right. *Hatten v. Rains*, 854 F.2d 687, 690 (5th Cir. 1988). A "fundamental right," for purposes of equal protection analysis, is one that is "among the rights and liberties protected by the Constitution." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973).

Petitioner not only fails to show that being denied review of his parole file burdens a fundamental right, he fails to show he was intentionally treated differently from other similarly-situated prisoners absent a rational basis. See *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Indeed, vague and conclusional allegations that a prisoner's equal protection rights have been violated are insufficient to raise an equal protection claim. *Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990). Accordingly, the state habeas court's denial of this claim was not unreasonable and it is denied.

### IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**.

It is further **ORDERED** that Petitioner's Motion to Dismiss (ECF No. 39) is **DENIED**.

It is finally **ORDERED** that a certificate of appealability shall not issue in this case.

SIGNED this 23rd day of March, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

10